UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELBERT COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-01224-TWP-CSW |
| | ) |
| COINBASE, INC., | ) |
| | ) |
| Defendant. | ) |

### ORDER ON PENDING MOTIONS

This matter is before the Court on the *Motion to Compel Arbitration and Stay Proceedings* (the "*Motion*"), (Dkt. 14), and *Motion to Hold Plaintiff's Motions in Abeyance* (the "*Motion to Hold in Abeyance*"), (Dkt. 18), filed by Defendant Coinbase Inc. ("Coinbase"). For the following reasons, the Court **STRIKES** self-represented Plaintiff Elbert Coleman's Supplemental Response, (Dkt. 20); **GRANTS** the *Motion*, (Dkt. 14); **DENIES as moot** the *Motion to Hold in Abeyance*, (Dkt. 18); and **RECOMMENDS** Coleman's *Motion for Leave to File Supplemental Pleading*, (Dkt. 11), and *Motion for Summary Judgment*, (Dkt. 13), be denied as moot.

**I.   BACKGROUND**

For purposes of this *Motion*, the Court briefly summarizes the facts. However, these facts do not represent findings or conclusions of the Court.

Coleman's complaint alleges five causes of action against Coinbase: (1) violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, (2) breach of contract, (3) negligence, (4) deceptive consumer sales practices, Ind. Code § 24-5-0.5-3, *et seq.*, and (5) treble damages under Ind. Code § 34-24-3-1, *et seq.* (Dkt. 1-2).

Coinbase operates an online platform for buying, selling, and transferring cryptocurrencies like Bitcoin and Ethereum. (Dkt. 14 at 3 (citing Dkt. 15 at ¶ 3)).

1

To access Coinbase's services, prospective users are required to create an account and accept the Coinbase User Agreement. (*Id.* (citing Dkt. 15 at ¶ 5).

Coleman alleges he maintained an account with Coinbase. (Dkt. 1-2 at 3). Coinbase's records indicate Coleman first created an account on October 17, 2017. (Dkt. 15). To create this account, he assented to the 2017 User Agreement, which included an arbitration provision, by checking a box indicating he agreed to the 2017 User Agreement and then clicking a button to continue. (*See id.*); (*see also* Dkt. 16 at 3 ("Plaintiff accepted original terms.")).

Then in 2022, Coinbase updated its User Agreement (the "2022 User Agreement"). (Dkt. 15). This updated agreement also includes an arbitration provision (the "Arbitration Provision"). (*Id.*). Coinbase provided notice of the 2022 User Agreement to all of its users, as well as an opportunity to read and accept the same, via email. (*Id.*). In order for an existing user who had not yet accepted the 2022 User Agreement via email to log into his or her account after February 3, 2022, the user would have to review the 2022 User Agreement and click, "Accept terms." (*Id.*). Coinbase's records indicate Coleman clicked this button on February 5, 2022. (*Id.*).

On or about May 15, 2025, Coleman discovered unauthorized transactions on his Coinbase account. (Dkt. 1-2 at 3); (*see* Dkt. 13 at 2). Though he promptly reported these unauthorized transactions to Coinbase and demanded return of his funds, "Coinbase failed to return the funds or provide any resolution." (Dkt. 1-2 at 3). This suit followed, and Coinbase filed the instant *Motion*. (Dkt. 14).

On August 6, 2025, the Court issued rulings on Coleman's various motions, including a denial of the motion to remand. (Dkt. 30).

## II.   FILINGS RELATED TO *MOTION*

On July 11, 2025, Coleman filed a Memorandum in Opposition to the *Motion* (the "Response"). (Dkt. 16). He subsequently filed Plaintiff's "Judicial Notice of Admissions and Authenticated Email Records in Support of Summary Judgement and Opposition to Arbitration," which contained several exhibits. (Dkt. 17).

Coleman then filed a Supplemental Response, which is not permitted under the Federal Rules of Civil Procedure without first seeking leave to do so. (Dkt. 20); *see* S.D. Ind. L.R. 7-1. Accordingly, the Supplemental Response is **STRICKEN**, and the Court does not consider it. (Dkt. 20); *see* S.D. Ind. L.R. 1-3; *e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2013 WL 566805, at *11 (N.D. Ill. Feb. 13, 2013) (noting the Court's inherent authority to strike impermissible filings (citing *Cleveland v. Porca Co.,* 38 F.3d 289, 297 (7th Cir.1994)).[1]

Coinbase filed a Reply. (Dkt. 22).

### III.  LEGAL STANDARD

In 1925, Congress enacted the Federal Arbitration Act ("FAA") in response to "widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, arbitration is a matter of contract. *Am. Exp.*, 570 U.S. at 233. Consistent with this principle, courts must place arbitration agreements "on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).

A party seeking to compel arbitration must show (1) a valid agreement to arbitrate, (2) the dispute is within the scope of arbitration, and (3) the opposing party refuses to proceed to arbitration. *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). Arbitration can only be compelled when the court is "satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *United Nat. Foods, Inc.*

---

[1] Coleman also separately responded to Coinbase's *Motion to Hold in Abeyance*; that Supplemental Response is not a proper response for the same reason. (Dkts. 18, 19).

3

*v. Teamsters Loc 414*, 58 F.4th 927, 933 (7th Cir. 2023).  Whether a valid arbitration agreement exists is a matter of state contract law.  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).

Under Indiana law,[2] an arbitration agreement – like any enforceable contract – requires an offer, acceptance, consideration.  *Land v. IU Credit Union*, 218 N.E.3d 1282, 1287 (Ind. 2023).  Assent to the contract may be demonstrated by acts.  *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 n.1 (Ind. Ct. App. 2007).

"One way to assent to and form a contract online is for a customer to click on an 'I Accept' button as part of a 'clickwrap' agreement. Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract."  *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024) (citations and internal quotation marks omitted); *see also Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009) ("The primary focus when deciding whether a clickwrap agreement is enforceable is whether the party clicking it had reasonable notice of and manifested assent to the agreement.").

If the moving party establishes that there is a valid arbitration agreement, the FAA provides a strong presumption that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotations omitted).[3]  Any doubt concerning the arbitration "should be resolved in favor of coverage."  *Id.*  This presumption is especially applicable when the arbitration clause is broad.  *See id.*  Only the "most forceful evidence" to exclude a claim from arbitration will prevail.  *Id.*

---

[2] Coinbase maintains Indiana law applies, (Dkt. 14 at 11), and Coleman's Response suggests that he believes Indiana applies as well, (*see* Dkt. 16 at 5–6).

[3] Coleman misstates the burden by placing it on Coinbase.  (Dkt. 15).  Though Coinbase bears the burden of proving that an agreement to arbitrate exists, *Domer*, 116 F.4th at 694, as Coleman implicitly recognizes by citing *Green Tree Fin. Corp. Alabama v. Randolph*, "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue," 531 U.S. 79, 92 (2000) (citing cases).

A motion to compel arbitration is decided according to the standard used to resolve summary judgment motions pursuant to Fed. R. Civ. P. 56. *Tinder*, 305 F.3d at 735. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citing *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir.1995)).

### IV.  DISCUSSION

Coinbase argues this dispute falls under the Arbitration Provision in the parties' 2022 User Agreement, which also delegates questions of arbitrability to the arbitrator. (Dkt. 14). Interpreting the Response broadly,[4] Coleman argues: (1) Coinbase has not met its burden; (2) the arbitration agreement is unenforceable because he did not assent, (*see* Dkt. 16 at 5–6); (3) the agreement is procedurally and substantively unconscionable and is therefore unenforceable as a matter of law; and (4) EFTA grants Coleman statutory rights that must be vindicated through the judicial process rather than arbitration, (Dkt. 16). For the following reasons, these arguments are rejected, the *Motion* is **GRANTED**, and Coleman must arbitrate his claims. (Dkt. 14).

#### a. Valid Contract

Coinbase has presented evidence in the form of a sworn affidavit and exhibits that all of its users must click "I Agree" to its User Agreement before creating an account. (Dkt. 15). Coinbase's User Agreement was updated in 2022, and each existing user received an email directing them to agree to that agreement. (*Id.*). Users could not login to their Coinbase accounts after February 3, 2022, without agreeing to the 2022 User Agreement. (*Id.*). Coinbase further produced a log

---

[4] The Court broadly interprets filings and arguments by self-represented parties. *See, e.g., Nixon v. Individual Head of St. Joseph Mortg. Co.*, 615 F. Supp. 898 (N.D. Ind. 1985), *aff'd sub nom. Nixon v. Head of St. Joseph Mortg. Co.*, 792 F.2d 142 (7th Cir. 1986) (citing *Haines v. Kerner,* 404 U.S. 519 (1972)).

5

indicating the exact date and time Coleman agreed to the 2022 User Agreement. (*Id.*).

Coleman concedes that he assented to the 2017 User Agreement. (*See* Dkt. 16 at 3 ("Plaintiff accepted original terms.")). Coleman's complaint also states that "[he] entered into a contractual agreement with Coinbase, which included the terms of Coinbase One." (Dkt. 1-2 at 4). Furthermore, Coleman concedes that he "maintained an account with Coinbase and was an active subscriber to Coinbase One at all relevant times." (Dkt. 1-2 at 3). Coleman alleges his "Coinbase account was compromised on or about May 15, 2025." (Dkt. 13 at 2). Because Coleman concedes he maintained a Coinbase account in and after 2022, it necessarily follows that he had to agree to the 2022 User Agreement to be able to use his Coinbase account. *See Jallali v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc.*, 908 N.E.2d 1168 (Ind. Ct. App. 2009) (enforcing a forum selection clause where the defendant presented evidence demonstrating that in order to use its product, the plaintiff "had to execute a clickwrap agreement" because "it would have been impossible" for the plaintiff to use the product without first establishing an account with defendant, and to establish an account, the plaintiff "would first have had to click 'Accept' under a dialogue box that contained an 'ACKNOWLEDGMENT AND AGREEMENT'").

Thus, there is no genuine dispute of material fact that Coleman assented to the 2022 User Agreement, which contains the Arbitration Provision.

Coleman's argument that he did not assent and/or that he did not have notice of the 2022 User Agreement is not persuasive. (*See* Dkt. 15); (*see also id.* at 5).

Additionally, interpreting Coleman's arguments broadly, he argues that "[a]s per *Land*," assent cannot be established by "silence or use." (*See* Dkt. 16 at 6); *see also Land*, 218 N.E. 3d at 1291. In *Land v. IU Credit Union*, after the plaintiff agreed to the original contract by clicking, "Accept," the company sent an updated contract, but she did not click "Accept" to that updated contract. *Id.* at 1285, 1289. The Court held that the plaintiff's "silence *and inaction* did not amount to acceptance" of the updated contract. *Id.* at 1291 (emphasis added). Here, on the

6

other hand, Coinbase presents evidence that Coleman took action: particularly, Coleman clicked "I agree" on the 2022 User Agreement. Thus, this case is distinguishable from *Land*, and there is a valid contract.

### b. Clear and Unmistakable Delegation Clause

Having determined that Coleman assented to the 2022 User Agreement, the question becomes whether there is clear and unmistakable evidence that the parties delegated arbitrability to the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Here, the 2022 User Agreement contains a Delegation Clause that delegates questions of arbitrability to the arbitrator:

> The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement.

(Dkt. 15 at 48). Therefore, any question as to the validity of the Arbitration Provision and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("Under the Act and this Court's cases, the question of who decides arbitrability is itself a question of contract. The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.").

Moreover, the Arbitration Provision also incorporates by reference the American Arbitration Association's Consumer Arbitration Rules and Mediation Procedures. (Dkt. 15 at 47). Rule 7(a)–(b) provides in part:

> The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or

7

> counterclaim. . . . The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.

AAA Consumer Arb. Rules and Mediation Procedures, Rule 7(a)–(b). Incorporation of the AAA Arbitration Rules is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See, e.g.*, *Gilman v. Walter*, 61 F. Supp. 3d 794, 800 (S.D. Ind. 2014).

Here, the plain language of the Arbitration Provision and the incorporation of AAA's Consumer Arbitration Rules mandate that all questions regarding arbitrability, including existence, scope and validity of the agreement to arbitrate, must be submitted to arbitration. Unless the Court finds that the Delegation Clause is unconscionable, as Coleman contends, the Court must enforce the delegation clause.

### c. Unconscionability

Coleman argues the Arbitration Provision is procedurally and substantively unconscionable and is therefore unenforceable as a matter of law. (Dkt. 16 at 3, 5). In support, Coleman cites *Campbell v. Keagle Inc.*, No. 21-2256 (7th Cir. March 4, 2022). However, that unpublished opinion is not persuasive because there, the Seventh Circuit vacated the district court's denial of the motion to compel arbitration and remanded with instructions to refer the matter to arbitration. *Id.*[5]

Under Indiana law, "to be unconscionable, the contract must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept. A contract is not unenforceable merely because one party enjoys advantages over another." *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004) (cleaned up) (citations omitted). Coleman does not allege – let alone provide evidence in support – that the 2022 User Agreement was such that no reasonable man would accept.

---

[5] Coleman also cites *Morrison v. Amway*, 336 F. Supp. 2d 1193 (2003), which does not address unconscionability. (Dkt. 16 at 5).

Rather, as Coinbase notes in its brief, this specific Arbitration Provision has been enforced by numerous federal courts. (Dkt. 14 at 14–15 (citing cases)); *see also Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) (reversing the district court, which had denied the motion to compel arbitration in part because it found the Arbitration Provision unconscionable). The Court finds no reason why this Arbitration Provision should now be deemed unconscionable.

Coleman's remaining arguments are unpersuasive. He cites *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), but that case does not relate to arbitration. (Dkt. 16 at 2). Additionally, Coleman provides no support for his statement that "Courts consistently hold that EFTA rights are judicial, not arbitrable, when arbitration would eliminate or diminish statutory entitlements." (*Id.*). The case he does cite, *Preston v. Ferrer*, 552 U.S. 346, 353 (2008), does not advance his argument. (*Id.* at 4–5). There, the Supreme Court stated that "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are" within the arbitrator's range of knowledge. *See id.* (citation omitted). Moreover, the Court is unable to locate other authorities offered by Coleman[6], specifically "Brown v. Citigroup, 903 F.3d 285, 289 (7th Cir. 2018)" and "Spencer v. State, 611 N.E.2d 69 (Ind. 1993)." (*See* Dkts. 24, 27).

Accordingly, the Court concludes that there exists a valid and enforceable agreement between Coleman and Coinbase to arbitrate their dispute, as manifested in the 2022 User Agreement and its Arbitration Provision. Because Coleman has refused to arbitrate, the Court now **GRANTS** Coinbase's *Motion*. (Dkt. 14).

Coinbase has also requested a stay of the action pending arbitration. Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper

---

[6] The Court also reviewed Coleman's filing at (Dkt. 17), but that filing does not advance Coleman's arguments.

course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather to dismiss outright."). The Court will therefore stay this action pending the arbitration.

### V.     *MOTION TO HOLD IN ABEYANCE*

The *Motion to Hold in Abeyance* requests the Court to stay all of Coleman's motions and filings until after the Court has considered the *Motion*. (Dkt. 18). Because the Court now issues its ruling on the *Motion*, the *Motion to Hold in Abeyance* is **DENIED as moot**. (*Id.*).

### VI.    REMAINING MOTIONS

Because arbitration is the proper forum for the parties to litigate this dispute, the Undersigned **RECOMMENDS** to the District Court Judge that Coleman's *Motion for Leave to File Supplemental Pleading*, (Dkt. 11), and *Motion for Summary Judgment*, (Dkt. 13), be denied as moot.

### VII.   CONCLUSION

For the foregoing reasons, and to summarize: the Supplemental Response, (Dkt. 20), is **STRICKEN**; the *Motion to Compel Arbitration and Stay Proceedings*, (Dkt. 14), is **GRANTED**; and the *Motion to Hold in Abeyance*, (Dkt. 18), is **DENIED as moot**. If Coleman intends to pursue his claims, he must proceed as set forth in the Arbitration Agreement. Accordingly, the Undersigned **RECOMMENDS** Coleman's *Motion for Leave to File Supplemental Pleading*, (Dkt. 11), and *Motion for Summary Judgment*, (Dkt. 13), be denied as moot.

Pending further order of the Court, all proceedings in this action are hereby **STAYED**. Coinbase is **ORDERED** to file a status report on or before **September 9, 2025**, indicating whether arbitration was initiated.

If arbitration is not pursued by **September 9, 2025**, the Undersigned further **RECOMMENDS** that this action be dismissed with prejudice.

**SO ORDERED.**

Date: August 7, 2025

*Crystal S. Wildeman*
Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

Distribution:

ELBERT COLEMAN
P.O Box 681546
Indianapolis, IN 46268

Steven C. Coffaro
Keating Muething & Klekamp
steve.coffaro@kmklaw.com